S91A1271. NORFOLK SOUTHERN CORPORATION et al. v. SMITH.
(414 SE2d 485)

BELL, Justice.

This is a Federal Employers' Liability Act (FELA) and state tort case, in which defendants appeal from a jury verdict cancelling two releases that plaintiff-appellee Kenneth Smith executed in favor of appellants on December 30, 1985. Appellee was an employee of appellant Central of Georgia Railroad Company (Central of Georgia). In August 1985 he was injured in an on-the-job accident. Appellee subsequently began undergoing treatment by a psychologist, who diagnosed him as suffering from depression. On November 1, 1985, appellee went to an office of Southern Railway Company (Southern), an affiliate of Central of Georgia, and fired gunshots into a ceiling. Thereafter, he was hospitalized, and was diagnosed as suffering a psychotic

episode. His mental state quickly improved, and he was discharged from the hospital on November 23, 1985. In the period between his discharge and his execution of the releases, he was seen several times by the psychologist and a psychiatrist who had treated him while he was hospitalized.

Appellee learned of a voluntary separation program under which employees of Central of Georgia could receive $25,000 in return for executing resignations from employment and releases, and appellee decided to participate. Appellee also negotiated with Central of Georgia á $25,000 settlement of his claim for personal injuries suffered in the August 1985 accident. On December 30, 1985, appellee and his wife went to an office of Southern, where he executed a resignation from employment and a release in return for $25,000. At the same meeting, he executed a release in return for $25,000 as compensation for his August 1985 injuries.

In April 1987 appellee sued Central of Georgia, Southern, and another affiliate of Central of Georgia, Norfolk Southern Corporation, as well as two of his former supervisors individually, seeking damages for intentional and negligent infliction of emotional distress. His claim against the three corporate defendants was based on FELA (and sometimes hereafter the three defendants will be referred to as "the FELA appellants"). His claim against his two former supervisors was brought under state tort law (and sometimes hereafter those two defendants will be referred to as "the tort appellants"). In their answers, appellants alleged that appellee's claims were barred by the releases he had executed on December 30, 1985. Appellee responded by amending his complaint to seek cancellation of the releases on the ground of mental incapacity. He also added a claim for damages for the injuries he had suffered in August 1985. The trial court conducted a jury trial solely on the issue of the validity of the releases, and the jury returned a verdict for appellee, setting aside the releases. After the court entered an OCGA § 9-11-54 (b) final judgment on the verdict, appellants filed the present appeal. For the reasons we give in this opinion, we reverse the judgment of the trial court.

1. Appellants contend that the court erred by failing to instruct the jury on the principle of ratification. Appellee responds that ratification has no application to this action because it involves FELA. As we shall explain below, we find merit in appellants' contention, and hold that the court erred by failing to charge on ratification.

(a) The threshold issue is whether the principle of ratification applies to this case. As to the tort appellants,

[t]he contract of an insane, a mentally ill, . . . or a mentally incompetent person who has never been adjudicated to be insane, mentally ill, . . . or mentally incompetent to the ex-

tent that he is incapable of managing his estate as prescribed by this Code *is not absolutely void but only voidable.* [Emphasis supplied.] [OCGA § 13-3-24.]

Moreover, it is well established that a contract executed by a person without the requisite mental capacity may be ratified expressly or by implication after that person is restored to mental capacity. *Brown v. Carmichael,* 152 Ga. 353, 354 (3, 4) (110 SE 3) (1921).

As to the FELA appellants, appellee contends that as a matter of law there can be no ratification of releases in FELA cases. However, our research has uncovered no federal FELA case that addresses whether a release that was unenforceable when executed due to lack of mental capacity may be ratified after mental capacity is regained. In this regard, we read nothing in *Hogue v. Southern R. Co.,* 390 U. S. 516 (88 SC 1150, 20 LE2d 73) (1968), as prohibiting or even discouraging application of the principle of ratification in such circumstances. In the absence of any federal law on the question, we deem the best course to be application of the well established law in Georgia. Accordingly, we hold that ratification was applicable to the FELA appellants in this case.[1]

(b) For the purposes of our analysis, we assume without deciding that at the time appellee executed the releases he lacked the requisite mental capacity for the releases to be enforceable. Nevertheless, there is evidence in the record that appellee subsequently regained the necessary mental capacity, and that during the period when he had that mental capacity he engaged in conduct that constituted ratification of the releases.

In this regard, we note that we do not accept the argument of appellants that appellee ratified the releases by virtue of spending the money he received for the releases. In *Hogue v. Southern R. Co.,* supra, 390 U. S., it was held that the proceeds from a settlement do not have to be tendered back before attempting to void a FELA release that was executed in connection with the settlement. Although *Hogue* did not address whether the act of *spending* the proceeds might constitute evidence of ratification, we find that a rule that such conduct could constitute ratification would be inconsistent with the spirit and intent of *Hogue,* as it would effectively force the recipient of the proceeds to maintain the proceeds in escrow. Accordingly, appellee's spending of the proceeds was irrelevant to the question of ratification.

---

[1] We do not by this holding intimate that appellee is precluded from raising anew on remand the question of the applicability of the ratification to FELA releases in the event appellee discovers some controlling federal precedent. As we hold above, we do not view *Hogue v. Southern R. Co.* as controlling on this issue.

However, there is evidence in the record other than the spending of the proceeds that indicates appellee at least implicitly ratified the releases. This evidence includes certain statements appellee made to various persons indicating his approval of the settlement, and also includes the passage of more than 15 months between executing the releases and filing the present action, see *Brown v. Carmichael*, supra, 152 Ga. 354 (lapse of time after restoration to mental capacity may ratify by implication). The evidence of ratification was sufficient to authorize a jury charge on that issue, and the trial court therefore was required to fully charge on the issue.

(c) The sole instruction that the court gave on ratification was as follows:

> I charge you that the contract of a mentally incompetent person who is incapable of managing his estate is not absolutely void but rather is merely voidable. A voidable contract made by such a person may later become valid and binding upon him *by ratification.* [Emphasis supplied.]

This instruction gave no explanation of the principle of ratification, and hence the jury was left with no legal guidelines for applying that principle.

(d) In contrast, appellants requested the following charge, which was based on § 13-3-24 and *Brown v. Carmichael*, supra, 152 Ga.:

> I charge you, Members of the Jury, that the contract of a mentally incompetent person who has never been adjudicated to be mentally incompetent to the extent that he is incapable of managing his estate is not void but is merely voidable. However, one who is mentally incapable of making a contract or release may expressly, after being returned to mental competency, ratify the contract, or may, by lapse of time after restoration of mental capacity, or sound mind, by implication ratify the contract.

This charge was an accurate statement of the law. Moreover, it was authorized by the evidence and was adjusted to the issues in this case. Finally, the question of ratification was a linchpin of appellants' defense. For these reasons, the trial court committed harmful error by refusing to give the charge, and the judgment must be reversed as to all appellants.

2. In their second enumeration appellants contend that the court erred by denying their motion for directed verdict on whether appellee ratified the releases.

A motion for directed verdict shall be granted only "[i]f there is no conflict in the evidence as to any material issue and the evidence

introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a).

> In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the "any evidence" test. [Cit.] *Southern R. Co. v. Lawson,* 256 Ga. 798, 799-800 (1 a) (353 SE2d 491) (1987).

Our review of the record shows there was a conflict in the evidence concerning whether appellee ratified the releases, and hence we find that the trial court did not err by denying the motion for directed verdict on the issue of ratification.

3. Appellants' first enumeration is that the trial court erred by denying their motion for a directed verdict on the question of appellee's mental capacity to execute the releases.

As to the tort appellants, appellee had the burden of showing that he lacked the necessary mental capacity at the time he executed the releases. The requisite degree of mental capacity has been defined in two alternative but equivalent ways, which is that a contract is subject to cancellation if the person executing the contract was entirely without understanding of the contract or if the person lacked a full and clear understanding of the nature and consequences of the contract. See *Joiner v. Joiner,* 225 Ga. 699, 702-705 (6) (171 SE2d 297) (1969); *Summer v. Boyd,* 208 Ga. 207, 209-210 (1) (66 SE2d 51) (1951); *Barlow v. Strange,* 120 Ga. 1015, 1017-1018 (2) (48 SE 344) (1904). As to the FELA appellants, the parties agree that there is a dearth of federal law concerning the necessary mental capacity to execute releases in FELA cases. For purposes of our review of appellants' contention, we will assume that Georgia law is applicable to this question.

Our review of the record shows that the evidence was in conflict concerning whether, at the time he executed the releases, appellee was entirely without understanding of them or lacked a full and clear understanding of their nature and consequences. Accordingly, we hold that the trial court did not err by denying a directed verdict on the question of appellee's mental capacity at the time he executed the releases.

4. The appellants' remaining enumerations concerning the trial court's instructions to the jury have no merit.

5. Under the circumstances of this case, we find no error in the trial court's refusal to admit into evidence a prior release executed by appellee.

*Judgment reversed. Fletcher, J., Judge James H. Weeks and*

*Judge Daniel M. Coursey, Jr., concur; Weltner, P. J., and Benham, J., concur in the judgment only; Clarke, C. J., Hunt and Sears-Collins, JJ., not participating.*

DECIDED MARCH 20, 1992.

*Hall, Bloch, Garland & Meyer, F. Kennedy Hall, J. Steven Stewart,* for appellants.
*Agnew, Schlan & Bennett, Paul R. Bennett, Brown, Katz, Flatau & Hasty, S. Phillip Brown,* for appellee.