A03A0253. CINCINNATI INSURANCE COMPANY v. MACLEOD.
(577 SE2d 799)

ELDRIDGE, Judge.

This is an appeal from the denial of motions for directed verdict and for judgment notwithstanding the verdict after a jury verdict for the estate of Michael A. Bohannon, bankrupt, by his trustee in bankruptcy, Jeff MacLeod, against the Cincinnati Insurance Company for failure to defend him in Civil Action No. 29670, Gordon Superior Court, in *VanGoosen v. Bohannon et al.*, which resulted in a default judgment of $322,997.40 on June 1, 1995. Finding no error, we affirm.

The facts show that on February 11, 1993, Michael Anthony Bohannon was involved in a collision while driving a vehicle owned by Harry Harwell and insured by Cincinnati. It was undisputed that Bohannon was a permissive driver. Bohannon notified Harwell of the collision, and Harwell immediately notified Cincinnati. On February

---

12, 1993, Jeff Maran, Cincinnati's adjuster, contacted both Bohannon and Harwell. Maran immediately investigated, took photographs of the collision scene, and talked to the injured Mary VanGoosen in the hospital. Maran considered Bohannon as an insured under the motor vehicle liability coverage. Therefore, Bohannon was included in the general releases for personal injury settlement for Tommy Chamlee, a passenger in the VanGoosen vehicle, and the property damage settlement of Mary and John VanGoosen. In June 1993, Rebecca Meany Mitek, another adjuster for Cincinnati, replaced Maran in dealing with the VanGoosen personal injury claim; between June 1993 and February 1995, she contacted the VanGoosens 19 times but never contacted Bohannon, the additional insured.

On February 15, 1995, Harwell was served with a suit in which Bohannon was also named as a defendant; immediately Harwell delivered the suit to Mitek. By letter dated February 17, 1995, Mitek forwarded the suit to attorneys retained by Cincinnati for defense, noting that Bohannon had also been served. On February 24, 1995, Mitek noted in her status logs that Cincinnati had no intention of providing a defense for Bohannon; however, neither Mitek nor any other employee of Cincinnati informed either Harwell or Bohannon that Bohannon would not be defended by Cincinnati.

Upon receipt of the suit and the later receipt of a letter from Cincinnati's lawyer defending Harwell, Bohannon contacted Harwell each time and believed that Cincinnati was defending both of them. On March 4, 1995, the letter from Cincinnati's lawyer Henry Tharpe, defending Harwell, was received by Bohannon, which was more than 30 days after service on him. Enclosed in the letter was the answer for Harwell. The letter asked Bohannon to forward the answer for Harwell to his lawyer or to his insurer and to have them contact Tharpe; however, the letter did not indicate that Cincinnati would not provide a defense for him, only that Tharpe was not defending both Harwell and Bohannon. The letter was silent about Cincinnati providing Bohannon a defense.

The case went into default, and on June 1, 1995, the VanGoosens took a default judgment against Bohannon in the amount of $322,997.40. Only after the default judgment had been entered did Cincinnati seek to defend Bohannon by moving to open the default judgment and having the judgment set aside. The case went to jury trial with a defense verdict for Bohannon, but on appeal this Court held that the trial court erroneously set aside the default judgment and ordered the default judgment to be reinstated. See *VanGoosen v. Bohannon*, 236 Ga. App. 361 (511 SE2d 925) (1999). Cincinnati paid the VanGoosens the policy limits on the vehicle of $100,000. Bohannon filed a Chapter 7 bankruptcy petition after the default judgment was reinstated; the trustee in bankruptcy, MacLeod, sued Cincinnati

for bad faith and on March 8, 2002, recovered a judgment against Cincinnati for $352,000.

Prior to trial, Bohannon moved for summary judgment as to Cincinnati's duty to defend and potential liability beyond the policy limits, and the trial court granted the motion. Cincinnati also moved for summary judgment, claiming that Bohannon failed to exercise his duty to elect coverage under Cincinnati's policy, which was denied; the trial court also determined that Cincinnati could not argue that Bohannon's negligence was the sole cause of the damages awarded to the VanGoosens. The trial court left the issue of mitigation of damages by Bohannon for jury determination.

1. Cincinnati contends that the trial court erred in holding that it was not entitled to prevail as a matter of law on the issue of Bohannon's failure to mitigate his damages.

As movant for directed verdict and j.n.o.v., Cincinnati had to show that there was no disputed material issue of fact and no conflict in evidence with all inferences made in favor of upholding the verdict, i.e., the evidence demanded a verdict in favor of the movant. OCGA § 9-11-50 (a); *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1) (508 SE2d 646) (1998); *Norfolk Southern Corp. v. Smith*, 262 Ga. 80, 83-84 (2) (414 SE2d 485) (1992); *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85) (1993). If there is any evidence supporting the verdict, then the verdict must be upheld, i.e., the "any evidence" test. *Norfolk Southern Corp. v. Smith*, supra at 84.

Cincinnati has failed to show that it was entitled to a verdict as a matter of law. The jury heard evidence on the issue of Bohannon's duty to mitigate his damages by the exercise of ordinary care and decided this disputed issue of fact against Cincinnati. Bohannon showed that he reported to the investigating officer that he was insured by Cincinnati; that he immediately informed the named insured who reported the collision to Cincinnati immediately; that on the day after the collision Bohannon talked to Cincinnati's adjuster; that the adjuster led Harwell to believe that Cincinnati would defend both of them; that Harwell conveyed to Bohannon that the adjuster represented that Cincinnati would defend them both; and that upon service of suit Bohannon contacted Harwell, telling him of suit. Further, Cincinnati failed to show that there was not a factual issue that Bohannon exercised ordinary care to mitigate his damages. *Western Host Atlanta v. Bass*, 183 Ga. App. 160 (1) (358 SE2d 312) (1987).

2. Cincinnati contends that the trial court erred in ruling that Bohannon's bankruptcy estate had standing to bring this action where it failed to provide any proof of the cause of action for bad faith breach of the duty to defend.

The trustee in bankruptcy is vested with all property of the bankrupt whether scheduled or not both legal and equitable at the

time of filing the petition in bankruptcy. 11 USCS § 541 (a) (1). All causes of action, whether assignable or transferable under state law, are vested in the bankruptcy estate under 11 USCS § 541 (a) (6) and (c) (1) (A). *United Technologies Corp. v. Gaines*, 225 Ga. App. 191, 192-193 (483 SE2d 357) (1997). Thus, the trustee was the real party in interest vested automatically with the only right to bring such action. Id. at 192. Federal law preempts state law. Thus, any cause of action that Bohannon possessed as an additional insured under the policy as a described third-party beneficiary and not as a party injured by the insured against Cincinnati for bad faith prior to his petition in bankruptcy was automatically vested in his trustee upon filing. *Owens v. Allstate Ins. Co.*, 216 Ga. App. 650, 651 (1) (455 SE2d 368) (1995).

3. Cincinnati contends that the trial court erred by determining that the rule of election did not apply to Bohannon who was an additional insured with a duty to specifically request coverage.

The " 'rule of election' was limited, in cases involving mandatory automobile insurance coverage, to those instances in which an insurer sought to rely on a non-owner driver's express declination of the insurance coverage provided by the owner's policy." *Ga. Farm &c. Ins. Co. v. Martin*, 264 Ga. 347, 350 (2) (444 SE2d 739) (1994). Thus, as a "matter of law [and] not contract, the insurance covering the car also covered a non-owner driving with permission, regardless of whether the driver expressly sought such coverage." Id. at 349.

Factually, Bohannon, as a nonowner driving with permission, sought coverage and never declined coverage. At the scene of the collision, Bohannon gave Cincinnati as his insurer; he understood from Maran, Cincinnati's adjuster, that, immediately after the collision, he was covered and would be defended. Further, Bohannon was covered by all earlier settlements of claims in the general releases. Such conduct by Bohannon and Cincinnati implies an affirmative election. *State Farm &c. Ins. Co. v. Herrick*, 166 Ga. App. 90, 92 (3) (303 SE2d 304) (1983).

Before the trial court in its motion for summary judgment, Cincinnati took the position that it "was not attempting to allege a duty to elect defense." "[T]he essential function and justification of judicial estoppel are to prevent the use of intentional self-contradiction as a means of obtaining [an] unfair advantage in a forum provided for suitors seeking justice." (Punctuation omitted.) *Reagan v. Lynch*, 241 Ga. App. 642, 643-644 (524 SE2d 510) (1999).

4. Cincinnati contends that the trial court erred in its application of law by not allowing Cincinnati to argue apportionment of liability and damages against Bohannon arising out of imposition of the default judgment in the VanGoosen litigation.

The trial court estopped Cincinnati from retrying the amount of

damages from the default judgment that could be awarded to Bohannon as an additional insured, because Cincinnati had belatedly provided a defense, had the default judgment set aside, defended Bohannon at trial, obtained a defense verdict, and defended the case on appeal. Thus, through Cincinnati's efforts in the underlying case, these damages had been decided in Bohannon's favor on the negligence issue; therefore, the damages were a result of the default judgment only. In *Leader Nat. Ins. Co. v. Kemp & Sons, Inc.*, 259 Ga. 329 (380 SE2d 458) (1989), the permissive driver was never defended by the insurer; therefore, the case is distinguished from this case both on the law and facts where the insurer defended the additional insured after the entry of default, had the default judgment set aside, tried the case to a jury with a defense verdict, and had the default judgment reinstated on appeal.

(a) *Collateral estoppel.* Unlike the doctrine of res judicata that requires an identity of the causes of action, the doctrine of collateral estoppel precludes relitigation when there is: (1) an identity of parties or their privies; (2) a previous determination of the same or similar issues in a previous court with competent jurisdiction; and (3) precludes only those issues actually litigated or by necessity had to be decided for the judgment to be rendered. *Shields v. BellSouth Advertising &c. Corp.*, 273 Ga. 774, 777 (545 SE2d 898) (2001); *Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Svcs.*, 273 Ga. 175, 178 (1) (538 SE2d 746) (2000); *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866-867 (2) (463 SE2d 5) (1995). A party's insurer stands in the shoes of the insured as to identity of parties or privies. *Southern Gen. Ins. Co. v. Nat. Union Fire Ins. Co. &c.*, 218 Ga. App. 400, 401 (461 SE2d 574) (1995); see also *American States Ins. Co. v. Walker*, 223 Ga. App. 194 (477 SE2d 360) (1996).

Cincinnati after the opening of default defended Bohannon and obtained a defendant's verdict that he was not negligent. In reversing the setting aside of the default judgment, this Court held that the jury verdict, finding Bohannon was not negligent, was erroneous and that the case should not have gone to the jury, because the default verdict should not have been set aside. Thus, Bohannon's negligence or want of negligence had been litigated by Cincinnati. Therefore, had Cincinnati provided a timely defense, a jury would have found Bohannon not liable and would have returned no damages; since the default judgment found $322,997.40 in damages, then all of such damages were attributable to Cincinnati's failure to defend timely. The cases of *Napier v. Napier*, 221 Ga. 813, 814 (147 SE2d 422) (1966), and *Holton v. Lankford*, 189 Ga. 506 (3) (6 SE2d 304) (1939), are distinguishable on the law and facts, because in both cases the trial court granted new trials in the underlying cases, causing the

issues to remain open on a de novo proceeding, i.e., there was no final judgment in the prior trial.

(b) *Judicial estoppel.* This is a classic case of judicial estoppel where Cincinnati in one judicial proceeding took an inconsistent legal and factual position successfully and then in a later proceeding took the opposite position in this case between the same parties. See *Reagan v. Lynch,* supra at 642; *American States Ins. Co. v. Walker,* supra. Judicial estoppel is applied to prevent a party from making a mockery of justice through gaining advantage by taking an inconsistent position from the position taken to its advantage in earlier litigation between the parties. See *Reagan v. Lynch,* supra at 642.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JANUARY 16, 2003 —
RECONSIDERATION DENIED FEBRUARY 19, 2003 —

Goodman, McGuffey, Aust & Lindsey, Edward H. Lindsey, Jr., for appellant.
Rodney L. Mathis, for appellee.