**FOURTH DIVISION**
**PHIPPS, P. J.,**
**DOYLE, P. J. AND MCFADDEN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 5, 2013**

# In the Court of Appeals of Georgia

| | |
|---|---|
| A13A0613. COFFEE IRON WORKS v. QORE, INC. | DO-035 |
| A13A0616. SPIVEY v. QORE, INC. | DO-037 |
| A13A0617. SPIVEY v. QORE, INC. | DO-038 |

DOYLE, Presiding Judge.

Plaintiffs Coffee Iron Works ("Coffee"), Floriece Spivey, and Ronnie Spivey appeal from the grant of summary judgment to defendant QORE, Inc., in the plaintiffs' suits against QORE for damages allegedly caused by erroneous analytical work done by QORE for the Georgia Department of Transportation ("DOT"). The plaintiffs each filed similar lawsuits based on the same set of facts, and they appeal from orders entered on similar grounds, so we have consolidated their appeals for review. For the reasons that follow, we affirm in each case.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The three cases share the same factual background. In the late 1990s, the DOT contracted with Douglas Asphalt Company to perform highway paving on a section of I-95. By 2003, an alleged defect in the paving emerged, so the DOT hired QORE to perform certain materials testing specified by the DOT on samples taken from the Douglas Asphalt work. The tests were done to determine the amount of hydrated lime in the asphalt.[2] QORE performed the testing, but according to the plaintiffs, the work was not scientifically valid, and it produced inaccurate results that led the DOT to place Douglas Asphalt into default with respect to several contracts for highway work. Douglas Asphalt also allegedly lost other contracts because of the test results.

The DOT presented a claim to the bonding company providing a surety for Douglas Asphalt's highway work. The bonding company prevailed, but the plaintiffs

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] QORE performed some of these tests and contracted with Applied Technical Services, Inc. ("ATS") to perform other parts of the testing. ATS was originally a defendant, but it is not part of this appeal.

alleged that the DOT's litigation caused the bonding company to expend $3,000,000 in legal fees, which Douglas Asphalt became responsible for under an indemnity agreement. In a separate case, Douglas Asphalt sued QORE in federal court, challenging the validity of the testing and arguing that QORE's negligent testing caused the DOT to default Douglas Asphalt. The district court granted summary judgment to QORE, and the judgment was affirmed on appeal by the Eleventh Circuit Court of Appeals.[3]

The plaintiffs in the present case also sued QORE, seeking damages based on the testing done by QORE, which allegedly caused the DOT to default Douglas Asphalt and stop awarding contracts to it. Ronnie Spivey and Coffee were guarantors of the Douglas Asphalt surety bond and allegedly suffered financial damage as a result of the DOT's claims. Floriece Spivey, a Douglas Asphalt shareholder, alleged that she was damaged by the loss of work awarded to Douglas Asphalt, which ultimately led to its demise. After discovery in each case, the trial court entered orders granting QORE's summary judgment motions against all three plaintiffs. Coffee appeals in Case No. A13A0613, Floriece appeals in Case No. A13A0616; and Ronnie appeals in Case No. A13A0617.

---

[3] See *Douglas Asphalt Co. v. QORE, Inc.*, 657 F3d 1146 (11th Cir. 2011).

1. In each case, the trial court ruled that the claims were barred by res judicata based on the federal litigation. "Although we conclude the trial court erred [by] granting summary judgment based on res judicata, the trial court's rulings support the grant of summary judgment based on the closely-related doctrine of collateral estoppel."[4] Accordingly, we affirm under the right for any reason rule.[5]

> The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.

> On the other hand, the related doctrine of collateral estoppel precludes the re-adjudication of an *issue* that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions.

---

[4] *Body of Christ &c. God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010).

[5] See *Braley v. City of Forest Park*, 286 Ga. 760, 766 (6) (692 SE2d 595) (2010) (affirming grant of summary judgment under the "right for any reason" rule).

However, *unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.*[6]

(a) *Identity of claims or issues*. The prior litigation, Douglas Asphalt's federal suit against QORE, involved a nearly identical theory of liability, i.e. that QORE negligently performed the material testing in an unscientific manner, which caused the DOT to improperly reject the work done by Douglas Asphalt and declare it in default under the contract for highway work. Under that theory, if QORE had done the testing properly, the DOT would not have found fault with Douglas Asphalt's work. The district court in that case characterized this cause of action as an ordinary negligence claim.[7] But in this case, the complaints allege professional negligence, supported by affidavits attached pursuant to OCGA § 9-11-9.1 and OCGA § 24-9-67.1 (2010). Therefore, because this cause of action is not identical to the one in the federal litigation, the res judicata bar, strickly speaking, does not attach.[8]

---

[6] (Citation and punctuation omitted; emphasis supplied.) *Body of Christ &c. God, Inc.*, 287 Ga. at 486.

[7] See *Douglas Asphalt Co.*, 657 F3d at 1150, 1156 (III).

[8] See *Body of Christ &c. God, Inc.*, 287 Ga. at 487 ("For [the res judicata] doctrine to act as a bar, the cause of action in each suit must be identical.")

5

Nevertheless, the issues decided by the district court and affirmed on appeal are identical to the issues presented in this case. In the federal case,

> Douglas [Asphalt] asserted that QORE . . . "negligently developed and/or utilized the [particular materials] tests to purportedly determine the amount of hydrated lime contained in the asphalt used for the I-95 project." It maintained that [QORE] "should have known that the tests were inaccurate and provided unreliable results," and thus [was] liable for any harm that Douglas [Asphalt] suffered when [QORE] provided them to GDOT without any appropriate warnings to qualify them.[9]

This argument was rejected on appeal, when the 11th Circuit ruled that QORE had no duty to Douglas Asphalt.[10]

Here, Coffee alleged that QORE breached its duty to properly perform the materials testing or qualify the results reported to the DOT, and this caused Coffee damage as a result of the harm to Douglas Asphalt. The underlying issue, the existence of QORE's duty to avoid harming Douglas Asphalt with inaccurate test results, is the same in both the federal litigation and this litigation. Therefore, there is sufficient identity of issues for purposes of collateral estoppel.

(punctuation omitted).

[9] (Punctuation omitted.) *Douglas Asphalt Co.*, 657 F3d at 1156 (III).

[10] See id. at 1158 (III).

6

(b) *Identity of parties or their privies*. Coffee alleges that it was harmed by virtue of its status as a guarantor of surety bonds on Douglas Asphalt's work. "A party's insurer stands in the shoes of the insured as to identity of parties or privies."[11] Based on this principle, we conclude that Coffee's status as guarantor of the surety bond places it in privity with Douglas Asphalt, who was the plaintiff in the earlier litigation. Thus, there is identity of privies.

(c) *Previous adjudication*. The federal district court had jurisdiction to resolve the case brought by Douglas Asphalt, and a final determination was made as to the issue of QORE's duty to Douglas Asphalt.[12] Thus, in light of the unity of issues and privies, the prior litigation bars the re-litigation of this issue in this case. Accordingly, we affirm the trial court's grant of summary judgment to QORE.

2. Coffee's remaining enumeration is moot.

*Case No. A13A0616*

3. In this case, the trial court granted summary judgment to QORE against Floriece Spivey on the same grounds. The above analysis applies, with the only

---

[11] *Cincinnati Ins. Co. v. MacLeod*, 259 Ga. App. 761, 765 (4) (a) (577 SE2d 799) (2003). See also *American States Ins. Co. v. Walker*, 223 Ga. App. 194, 195 (1) (b) (477 SE2d 360) (1996) (insurer stands in the shoes of the party).

[12] See *Douglas Asphalt Co.*, 657 F3d at 1159 (IV).

7

difference being the party, Floriece Spivey. She alleged injury by virtue of her status as a stockholder of Douglas Asphalt. Thus, we must determine whether she is in privity with Douglas Asphalt for purposes of collateral estoppel with respect to the federal litigation.

> A privy is generally defined as one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right . . . There is no definition of "privity" which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel, since privity depends upon the circumstances. Privity may be established if the party to the first suit represented the interests of the party to the second suit.[13]

Here, it is clear that Floriece's claim is premised on the liability initially litigated unsuccessfully by Douglas Asphalt, the corporation by which she claims her interest now. Her stated argument only asserts liability to the extent that Douglas Asphalt was wronged, and Douglas Asphalt fully litigated this interest in the federal litigation. Under these circumstances, the trial court correctly found Floriece to be in

---

[13] (Citations and punctuation omitted.) *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 421-422 (1) (627 SE2d 549) (2006).

privity with Douglas Asphalt for purposes of this litigation.[14] Accordingly, for the reasons stated in Case No. A13A0613, we affirm in this case.

*Case No. A13A0617*

4. Ronnie Spivey claimed injury by virtue of his status as a guarantor of surety bonds, in a similar position to Coffee in Case No. A13A0613. Therefore, for the reasons stated in Division 1, we affirm the grant of summary judgment to QORE in this case.

*Judgments affirmed. Phipps, P. J. and McFadden, J., concur.*

---

[14] See *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528, 534 (2) (a) (669 SE2d 536) (2008) (to be in privity "parties need not be identical[;] they must be so connected with a party to the previous judgment that the party fully represents the interest of the privy").