**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 26, 2014**

# In the Court of Appeals of Georgia

A13A1972. COST MANAGEMENT GROUP, INC., et al. v. BOMMER.

RAY, Judge.

This case has its genesis in competing lawsuits between former business associates. One suit was in federal court[1], and the other was in the Superior Court of Fulton County. In the federal suit, Daniel Bommer sued his erstwhile business partners, Steven Gareleck and George Remington Reynolds, in their individual capacities. In the superior court suit, companies controlled by Gareleck and Reynolds – Cost Management Group, Inc., Partnertel, Inc., and Telcentrex, LLC (collectively "CMG") – sued Bommer. This case is before us on appeal from the superior court's grant of partial summary judgment to Bommer.

---

[1] *Bommer v. Reynolds*, 465 Fed. Appx. 876 (11th Cir. 2012).

CMG first contends that the superior court erred in finding that its claims related to allegations that Bommer was wrongly competing with them through his company, Enhanced Billing Services ("EBS"), were collaterally estopped by the federal action. CMG also argues that the trial court erred in determining that the EBS-related claims were compulsory counterclaims in the federal action, thus barring further litigation in superior court. For the reasons that follow, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Footnote omitted.) *Coffee Iron Works v. QORE, Inc*., 322 Ga. App. 137, 137 (744 SE2d 114) (2013).

The evidence shows that in January 2006, Bommer's company, Telesis Management Corporation, merged with Partnertel and Telcentrex, companies controlled by Gareleck and Reynolds, to form CMG. These were all telecommunications companies. Bommer also owned another company, EBS, which handled hospital billing and which was not part of the merger that created CMG. The merger that created CMG also involved a Stockholders' Agreement and a Securities

2

Exchange Agreement ("SEA"). Pursuant to Section 6.5 of the SEA, Bommer agreed that beginning January 16, 2006, he would not solicit any current or prospective customers of CMG in a way that directly competed with CMG.

However, after some disputes over whether Bommer was impermissibly using EBS resources and wrongly competing with CMG, Gareleck and Reynolds invoked a buy-sell provision in the Stockholders' Agreement called a Special Purchase Notice ("SPN") and, inter alia, offered to purchase Bommer's shares in CMG. The SPN provided that Bommer would be paid $1,728,000 when the transaction closed, and an additional $192,000 pursuant to a promissory note if he entered into and did not violate a two-year non-competition agreement and a two-year non-solicitation agreement. Specifically, the SPN at Section 3 (a), under the heading entitled "Additional Terms," required Bommer's resignation and at Section 3 (b) provided that Bommer "will not directly or indirectly compete with the business of the Corporation by engaging in any business or enterprise that engages in telecommunication agency and resale services for telecommunications carriers anywhere within the United States."

In September 2008, Bommer submitted his resignation as a CMG officer and director, tendered his shares, and requested his $1,728,000.

3

*The District Court Litigation*

When Bommer did not receive payment, on March 23, 2009, he sued Garelek and Reynolds in their individual capacities in the United States District Court for the Northern District of Georgia, seeking to enforce the SPN. The complaint alleges, inter alia, breach of contract, and contends that there was a binding contract as to the SPN and the additional terms, including the noncompetition agreement. Gareleck and Reynolds responded by contending that there was no contract, alleging fraud, unclean hands, and failure of conditions precedent. At the hearing before the district court, counsel for Gareleck and Reynolds argued that the SPN was neither final nor enforceable because Bommer had met their offer with a counteroffer. In discussing Bommer's alleged counteroffers, counsel for Gareleck and Reynolds told the court, "[T]hose deal documents . . . contained all kinds of different terms from the SPN, but most importantly, *there was no non-competition agreement . . .* [Bommer] could not agree to a non-competition agreement, and so that issue just died."

The district court entered an order on April 26, 2011. In that order, the court stated that the issues before it were as follows: "the principal issue to be decided, under the facts of the case, is whether a binding contract was established between the parties. Also, *the supplemental issue to be decided is whether the parties ever*

4

*reached an agreement on the 'additional terms' of the SPN*." (Emphasis supplied.) The court then defined the SPN's "additional terms" – that is, the noncompetition portion of the agreement – in part, as follows: "(1) Bommer would resign as CMG's officer and director; [and] (2) *Bommer would execute a specified two-year non-competition and non-solicitation agreement ('restrictive covenants'), subject to review by counsel*." (Emphasis supplied.)

The court determined that a binding contract was established as to the SPN itself, but that "subsequent negotiations between the parties concerned the 'additional terms.' In this regard, the court found that the parties *never reached a binding contract, mainly because [Bommer] never agreed to the two-year non-competition provision of the SPN*." (Emphasis supplied.) The district court then determined that Bommer was entitled to recover $1,728,000 for the stock he tendered, but could not recover the $192,000 that was contingent on the "additional terms" because Bommer "never complied with the 'additional terms' of the SPN."

It is this potentially unclear wording – that is, the court's initial finding that Bommer *never agreed* to the "additional terms" versus its later statement that he "never *complied* with the additional terms" that underlies the instant dispute.

*The Appeal to the United States Court of Appeals for the Eleventh Circuit*

5

Reynolds and Gareleck appealed this ruling to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit's opinion notes that the district court found that Bommer "never complied with the SPN's 'Additional Terms.'" However, the Eleventh Circuit also writes that Gareleck and Reynolds

> especially draw our attention to the matter of no competition. They focus on one sentence in particular: 'The final terms of the non-competition agreement will be subject to review by each party's counsel and shall conform to the requirements of applicable law.' But we observe that [Bommer], by his acceptance, agreed that he *would execute* a non-competition agreement for a period of two years to bar his competition anywhere in the United States. We strongly doubt that [Bommer] was free to compete once he accepted the SPN.

(Emphasis supplied.) In a footnote, the Eleventh Circuit notes that "[w]e are not asked in this suit to enjoin [Bommer] from competing." The Eleventh Circuit goes on to say that

> although the SPN states that the 'final terms of the non-competition agreement will be subject to review by each party's counsel and shall conform to the requirements of applicable law,' we believe that the essential terms – time, area, and so on – had already been agreed to in the SPN; formalities and details remained to be worked out. In addition, as we understand the law, *the parties to a contract can agree to bind themselves by that contract to negotiate in good faith and to work out*

6

*– within an agreed framework – some terms that remain open. . . . The parties made an enforceable contract although it remained executory in part.*

(Emphasis supplied.) The Eleventh Circuit then affirmed the District Court's grant of summary judgment to Bommer.

*The Fulton County Superior Court Litigation*

One month after Bommer sued Gareleck and Reynolds in district court, on April 24, 2009, CMG – rather than Gareleck and Reynolds – sued Bommer in Fulton County Superior Court. The suit alleged, inter alia, breach of fiduciary duty, usurpation of corporate opportunities, unfaithful agent, conversion/theft of corporate property, fraud, and breach of the SEA, which is the agreement the parties signed in 2006 when their companies merged. Neither the initial nor the amended complaint mentions the SPN, which was the subject of the federal litigation.

On January 13, 2010, CMG filed a consent motion seeking a stay in the superior court proceeding until the district court ruled on pending cross motions for summary judgment, stating that "all Parties agree that the rulings . . . may impact the Parties' ability to resolve the Fulton Litigation." The superior court granted that motion. After the conclusion of the federal action, the stay was lifted, and Bommer

moved for partial summary judgment on all of CMG's claims related to his company, EBS, arguing that the federal action decided those issues and asserting collateral estoppel. The trial court granted that motion, finding that CMG was collaterally estopped and also that its claims were barred because they were compulsory counterclaims in the federal action. This appeal ensued.[2]

1. CMG first argues that the trial court erred in determining that its claims in the superior court litigation were barred by collateral estoppel. We agree.

> [C]ollateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim - so long as the issue *was determined* in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim. Furthermore, collateral estoppel only precludes those issues that *actually were litigated and decided in the previous action*, or that necessarily had to be decided in order for the previous judgment to have been rendered. Therefore, collateral estoppel does not necessarily bar an action merely because the judgment in the prior action was on the merits. Before collateral

---

[2] Bommer's motion to consolidate this appeal with the appeal of a separate order on summary judgment before this Court in Case No. A14A0186, *Cost Management Group, Inc., et al. v. Bommer*, is denied.

8

estoppel will bar consideration of an issue, that issue must *actually* have been decided.

(Citation omitted; emphasis supplied.) *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006).

In Bommer's motion for summary judgment before the superior court, the grant of which underlies the instant case, he contends that CMG is collaterally estopped by the federal action from pursuing its claims regarding his alleged use of EBS to violate the non-competition portion of the SPN[3]. Bommer contends that the federal action decided, on the merits, that he "was not entitled to recover the note payment of $192,000.00 as he *never complied with* the non-compete provision contained in the SPN." (Emphasis supplied.) Thus, Bommer argues, "collateral estoppel bars [CMG's] attempts to collect any additional monies for the breach of the noncompete from Bommer" and he was thus entitled to summary judgment as a matter of law. The superior court agreed, but we do not.

---

[3] It should be noted, however, that CMG's complaint does not refer to the SPN as providing the basis of any obligation it seeks to impose upon Bommer. Rather, the complaint premises its causes of action on duties imposed on Bommer by the SEA or generally under common law.

9

As is abundantly clear from the facts laid out above, the issues before the federal court were whether a binding agreement had been reached as to the SPN and further whether a binding agreement had been reached as to the SPN's "additional terms" regarding noncompetition. Counsel for Gareleck and Reynolds in the federal action mentioned Bommer's alleged impermissible competition with CMG through his operation of EBS, but only in the context of explaining the events leading up to the contract dispute over the SPN. Neither the transcript nor the pleadings from the federal action in the record before us show that the issue of whether Bommer violated the noncompetition portion of the SPN – which Gareleck and Reynolds contended was not a binding contract – or whether Bommer violated the SEA or general common law duties was ever squarely before the district court. The federal courts did not rule on the issues raised in CMG's superior court action as to whether Bommer impermissibly competed or conducted other wrongful actions through EBS.

"[F]or collateral estoppel to apply, a party must have had a full opportunity to litigate the issue in question during the prior action. Collateral estoppel will not bar consideration of an issue that has not *actually been decided*." (Citation and punctuation omitted; emphasis supplied) *Georgia Neurology & Rehabilitation, P.C. v. Hiller*, 310 Ga. App. 202, 205 (1) (712 SE2d 611) (2011).

10

Here, the superior court, in support of its finding of collateral estoppel, cites *Qos Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528 (669 SE2d 536) (2008) for the proposition that even if the noncompetition issue and other EBS-related claims were not dispositive of the federal action,

> [a] ruling is not dictum merely because the disposition of the case is or might have been made on some other ground. Where a case presents two or more points, any one of which is sufficient to determine the ultimate issue, but the court actually decides all such points, the case is an authoritative precedent as to every point decided, and none of such points can be regarded as having merely the status of a dictum.

(Citations omitted.) Id. at 532-533 (1) (c).

Relying upon *Qos Networks*, the superior court then found that because the federal action "discussed" the restrictive covenant of the SPN, it "is still considered adjudicated by the Federal Litigation under Georgia law." This finding is incorrect because, as discussed above, the federal litigation decided only that Bommer failed to comply with his agreement in the SPN to *later* agree to a noncompetition agreement. The federal litigation in no way decided that Bommer had failed to comply with any noncompetition agreement in the SPN, the SEA or imposed upon him by any other means.

11

In a case analogous to the instant action, this Court determined that even where the Eleventh Circuit implicitly ruled that any subsequent breach of an employment contract would not affect ownership of a trade name, because the court "did not address whether [appellee] had, in fact, committed such a breach . . . the federal courts did not actually decide the issue of whether [appellee] breached the employment contract, . . . [so appellant] is not collaterally estopped from litigating it in state court." *Hinely v. Alliance Metals, Inc. of Atlanta*, 285 Ga. App. 230, 235 (1) (645 SE2d 584) (2007).[4]

Here, the federal action found only that Bommer had not yet agreed to refrain from competition as a part of the SPN. The Eleventh Circuit found that this portion of the SPN "remained executory[.]" Even though the Eleventh Circuit also said, "[w]e strongly doubt that [Bommer] was free to compete once he accepted the SPN[,]" – that is, once he agreed to accept an as-yet-unagreed-to noncompetition agreement–

---

[4] Given our determination that the federal litigation did not decide the issue of whether Bommer breached the SPN's restrictive covenants, we need not reach the issues of whether Gareleck and Reynolds were in privity with CMG, nor do we need to reach the issue of whether the SPN superseded the SEA. The SEA is the subject of the superior court action. If the SPN did not supersede the SEA, then of course CMG's claims are not barred by collateral estoppel, as the federal action cannot have decided issues in the SEA that were not raised; if the SPN did supersede the SEA, the federal action's absence of any ruling on whether Bommer breached the restrictive covenants also means CMG's claims are not barred by collateral estoppel.

12

such a musing, couched merely as *strong doubt*, cannot be taken as a decision on the merits. If, for example, this Court rendered the instant opinion by stating, "We strongly doubt that CMG is collaterally estopped from pursuing its claims," we suspect we might receive a bid for clarity from the parties.

In summary, we find that CMG is not collaterally estopped from bringing its EBS-related claims in superior court.

2. CMG next contends that the trial court erred in finding that its EBS-related claims were compulsory counterclaims in the federal action, and that because they were not raised there, they are now barred in the superior court action. Finding error, we agree.

As in the instant case, a federal court sitting in diversity must apply state substantive law and federal procedural law. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (II) (A) (11th Cir. 2002). A state court's determination of whether an issue is substantive or procedural, for choice-of-law purposes, is binding on a federal court. *Shaps v. Provident Life & Accident Ins. Co.*, 244 F.3d 876, 883 (II) (11th Cir. 2001). This Court has determined that "OCGA § 9-11-13 (a), which governs compulsory counterclaims in Georgia, sets forth the method for bringing such claim and thus is procedural in nature." *Harper v. Harper*, 267 Ga. App. 553, 555 (1) (600

SE2d 659) (2004). As a result, in determining whether the EBS-related claims were compulsory counterclaims, we must examine federal procedural law.[5]

Fed. R. Civ. P. 13 (a) (1) provides as to compulsory counterclaims,

[a] pleading must state as a counterclaim any claim that – at the time of its service – *the pleader has against an opposing party* if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the *opposing party's* claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

(Emphasis supplied.)

Here, CMG argues that it was neither a "pleader" nor an "opposing party" in the federal court action, which Bommer filed against Gareleck and Reynolds in their individual capacities. CMG never was named as an opposing party in the federal suit, nor was it a "pleader" in Gareleck and Reynolds' answer in the federal case. Black's Law Dictionary at p. 1270 (Ninth Ed. 2009) defines the term "pleader" as "[a] party who asserts a particular pleading." While Black's does not define "opposing party," it defines "adverse party" as "[a] party whose interests are opposed to the interests of *another* party *to the action*." Id. at 1232. (Emphasis supplied). Bommer, however,

---

[5] We note that OCGA § 9-11-13 (a) is virtually identical in substance to Fed. R. Civ. P. 13 (a) (1).

14

essentially argues that, because CMG was a *potential party* in the federal litigation, it was required by Rule 13 to join or be joined in order to assert its EBS-related breach and noncompetition agreement claims against him.

We cannot say that CMG was under an obligation to intervene in the federal action in order to preserve its claims. The United States Supreme Court has determined that "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined." *Martin v. Wilks*, 490 U.S. 755, 763 (109 SCt 2180, 104 LE2d 835) (1989), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 120-166, 105 Stat. 1074, as stated in *Landgraf v. USI Film Products*, 511 U.S. 244, 250-251 (II) (114 SCt 1483, 128 LE2d 229) (1994). Our Eleventh Circuit, citing *Martin*, supra, found that the United States Supreme Court "expressly eschews a regime of mandatory intervention." *Mann v. City of Albany, Ga.*, 883 F.2d 999, 1005 (III), n. 2 (11th Cir. 1989). Our state Supreme Court also has recognized this principle. See *Barham v. City of Atlanta*, 292 Ga. 375, 377 (1) (b) (738 SE2d 52) (2013).

Further, in *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378 (11th Cir. 1991), our federal appeals court determined that a successor in interest pendente lite was

a potential defendant who was not joined in the prior action, and thus does not qualify as a pleader for purposes of the compulsory counterclaim bar. We do not find that appellant . . . who . . . was not joined as a defendant in the [initial] suit, can be barred for the very reason that [plaintiff-appellee] did not join him. Since [appellant] did not join in any pleading and had no obligation to join the [initial] suit, he cannot be barred now by a failure to have done so.

Id. at 1383 (B). Because CMG – unlike Gareleck and Reynolds – was neither a pleader nor an opposing party in the federal action, CMG's claims related to EBS and noncompetition were not compulsory counterclaims in the federal action and are not barred in the superior court.

*Judgment reversed. Barnes, P. J., and Miller, J., concur.*