A03A1673. GRINER v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY et al.
(596 SE2d 758)

SMITH, Chief Judge.

Walter Kenneth Griner appeals from the trial court's order granting summary judgment to the defendants in Griner's action for personal injury. Griner, a tow truck driver, was injured after being called to the scene of a collision between two trucks. He brought suit against the drivers of both trucks and their employers. Griner raises several arguments to support his contention that the trial court erred in granting summary judgment to the defendants. Because we find no merit in any of Griner's arguments, we affirm the judgment.

The record shows that the collision occurred when Edward Kier, a truck driver under lease to Carl F. Douglas d/b/a Faacawie Transport, was attempting to back his flatbed trailer truck into the driveway of his home after picking up a load of lumber for delivery the next day. As the trailer began to enter the driveway, it was struck at full speed by a pickup truck driven by Carnett Sam Dees, Jr., who was working for Georgia Farm Bureau Mutual Insurance Company at the time. The force of the collision wedged the front of Dees's pickup truck under the trailer, trapping Dees in the cab.

Griner was called to the scene by the Georgia State Patrol. He arrived at the collision shortly thereafter in his flatbed tow truck. A

number of cars and trucks were at the scene, including State Patrol, county and city police department vehicles, county and city fire department vehicles, and ambulances. Upon arrival, Griner observed the trailer truck across the road, and the back of Dees's pickup truck "sticking out from the back of that semi." Although Griner was dubious that his truck could pull the pickup out, either a State Patrol officer or a firefighter concerned with Dees's condition instructed Griner to "hook up" his chain to the pickup truck, and he did so. When that did not work, they tried the winch and cable apparatus on Griner's truck, even though Griner was almost certain that would not work, either.

As Griner feared, the cable snapped. His truck was essentially useless, and he parked it out of the way and walked around to Dees's truck. He stopped to look at the front of Dees's truck, to see "how bad the truck was hung under there." He heard an unidentified person "start hollering, 'Blow the tires out. Blow the tires out. Blow the tires out.'" According to Griner, at that point one of the firemen, wearing a fire suit and hat, pulled his knife out, saying: "Here, blow the tire." Griner accepted the knife and "poked" the tire. Although Griner had in mind to "barely ease it in the tire," as soon as the knife hit it, the tire "exploded." The explosion blew Griner's hand back and lacerated his fingers so severely he could see the flesh and bone. He turned to his uncle, Billy Young, who was a volunteer firefighter on the scene, and said something like "Oh, my God, I blew my fingers off."

Griner's uncle testified on his deposition that the volunteer firemen were involved, along with the EMTs, in trying to extricate and care for Dees. They were discussing the best way to remove him from the truck, and someone came up with the idea of lowering the front of the pickup truck by letting the air out of the tires. He could not remember who came up with the idea, but he recalled talking with his nephew about how his hand was injured. He testified that Griner told him "he hit the side wall with his knife, and then he looked, and his hand was blowed apart." He also testified that he would not personally recommend that anyone try to deflate a tire with a knife, because of the danger of a "blow back." In Young's opinion, the proper way to deflate a tire is to remove the valve stem.

Edward Cannington, Jr., a volunteer fireman, agreed with this opinion. He testified that the proper way to deflate a tire is to cut the valve stem with a bolt cutter. He also testified that he never told Griner to deflate the tire on the pickup truck, nor did he hear anyone else do so. Cannington also characterized wrecker drivers as extremely helpful at a collision site, and stated that an untrained member of the general public — not an EMT, firefighter, police officer, or wrecker driver — would not be permitted up close to a collision site. Cannington testified he would tell such a person "one time to leave.

The next time, be in back of a sheriff's car." Griner's uncle agreed that no member of the general public would be allowed near the collision scene and that he would ask the sheriff's department to remove such an individual.

Griner alleged in his complaint that the two drivers' negligence had caused the collision, that he was injured as a result of that collision, and that he was entitled to recover. The defendants opposed recovery on several grounds, and the trial court granted their motions for summary judgment in a brief order that did not state its reasoning or analysis. In his appeal, Griner challenges the grounds alleged in the defendants' motions.

1. Griner first contends that his injury was foreseeable, thereby challenging the defendants' position that Griner could not recover because his injury was not foreseeable and the defendants had no duty to guard against it. "Negligence consists of exposing someone to whom a duty of care is owed to a foreseeable, unreasonable probability of harm. Foresight requires the ability to anticipate a risk of harm from the conduct in some form. [Cit.]" *Amos v. City of Butler*, 242 Ga. App. 505, 506 (1) (529 SE2d 420) (2000).

Here, although it might arguably have been foreseeable that someone would be injured during the course of rescuing Dees, Griner's injury clearly was not foreseeable, for several reasons. First, the record shows without dispute that the trained rescue personnel at the scene knew that it was extremely dangerous to deflate a tire by piercing it with a knife. The proper, and safer, method is to cut off the valve stem with bolt cutters. It was therefore not foreseeable that an unnamed fireman would hand Griner a knife and tell him to "blow" the tire.

Second, we must presume that all the trained rescue personnel at the scene were aware of Georgia law requiring "all nongovernmental rescue organizations, associations, groups, teams, . . . or individuals" to be licensed by the State Director of Emergency Management. OCGA § 38-3-36 (a). Griner was not licensed to perform rescue operations, and again, it therefore was not foreseeable that an unnamed fireman would hand Griner a knife and instruct him to "blow" the tire.

The experience and advice of a wrecker driver may sometimes provide excellent suggestions regarding extrication methods, as noted by several witnesses, including Cannington. But wrecker drivers do not normally "blow" tires; their function is to separate vehicles and tow them away. As pointed out by appellees, an unnamed fireman handing Griner a knife is no different from a physician in the emergency room handing him a scalpel and telling him to make an incision on a patient. The sequence of events that resulted in Griner's injury was simply not foreseeable.

2. Griner also argues that he did not assume the risk and that the "rescue" doctrine permits him to recover for his injury.

> The rescue doctrine applies when the defendants' negligent acts or omissions have created a condition or situation which involves imminent and urgent peril to life and property. In such instances, those negligent acts or omissions are also negligent in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, attempt to rescue the endangered life or property by reasonably appropriate means.

*Lorie v. Standard Oil Co.*, 186 Ga. App. 753, 754 (1) (368 SE2d 765) (1988). "[T]he doctrine of rescue necessarily contemplates an assumption of the risk inherent in the peril created by the defendants' negligence." (Citation and punctuation omitted.) *Trammel v. Bradberry*, 256 Ga. App. 412, 421-422 (5) (568 SE2d 715) (2002); *Walker Hauling Co. v. Johnson*, 110 Ga. App. 620, 625 (139 SE2d 496) (1964).

But the rescue doctrine would apply only if Griner were acting simply as a volunteer, or bystander. Evidence showing that Griner was not simply a volunteer, or bystander, includes the fact that he was called to the scene by the Georgia State Patrol, in his capacity as a wrecker operator, because his name came up on the rotation list. His presence at the scene, therefore, was the result of a contractual duty. Additional evidence showed that Griner submitted a bill for his services, which was paid, and that he testified that he was inspecting the front of Dees's pickup truck when handed the knife, because "any time you work an accident, you've got to look at what the damage is on the vehicle you're picking up."

The trial court correctly granted the defendants' motions for summary judgment.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 16, 2004.

*Douglas L. Mutert*, for appellant.

*Coleman, Talley, Newbern, Kurrie, Preston & Holland, Edward F. Preston, Young, Thagard, Hoffman, Smith & Lawrence, John H. Smith, Jr., John T. Croley, Jr.*, for appellees.