**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 3, 2014**

# In the Court of Appeals of Georgia

A14A0981. SWOPE v. GREENBRIAR MALL LIMITED
       PARTNERSHIP et al.

McFADDEN, Judge.

Michael Juniel filed a premises liability action for injuries sustained when he was shot during an armed robbery while working as a security guard at a mall. The trial court granted summary judgment to the mall ownership and management defendants on the ground of assumption of the risk. Matthew Swope, the administrator of Juniel's estate, appeals.[1] Because there exist no genuine issues of material fact, we affirm.

---

[1] Juniel died during the pendency of the action, and Swope was substituted as a party. The record shows that the shooting occurred in March 2007, Juniel filed suit in March 2009, a suggestion of death was filed in December 2011, and a motion for substitution of party was filed in May 2012.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant of a motion for summary judgment, we review the evidence de novo, and construe all reasonable conclusions and inferences from the evidence in the light most favorable to the nonmovant. *Jones v. Barrow*, 304 Ga. App. 337 (696 SE2d 363) (2010).

So construed, the evidence shows that IPC International Corporation, an independent security contractor, hired Juniel to work as a "public safety officer" at Greenbriar Mall in Atlanta. Juniel was responsible for providing public safety services at the mall, patrolling the property and deterring criminal activity. On March 31, 2007, Juniel arrived for work at 5:00 p.m., and was assigned by his supervisor to patrol a parking lot area of the mall. As Juniel walked through the mall to his assigned post, he saw several masked men near a jewelry store and approached them. One of them had a gun and aimed it toward a mall patron. Juniel intervened in the confrontation, covering the patron's body with his own in an attempt to shield him from the gunshots. Both Juniel and the patron suffered bullet wounds in the shooting. The masked men then entered the jewelry store, shot a security guard in the store, smashed the counter, stole jewelry, and fled from the mall.

Juniel filed a premises liability action against Greenbriar Mall (2006) Limited Partnership, Hendon Properties, LLC, Hendon Property Management, LLC and O'Leary Partners, Inc. (collectively the "Greenbriar Mall defendants"), claiming that negligent management and patrol of the mall had proximately caused his injuries. The trial court granted summary judgment to the Greenbriar Mall defendants on the basis of assumption of the risk, concluding that "recovery is precluded because the risk [Juniel] encountered was one inherent in his job as a uniformed public safety officer." This appeal followed.

1. *Assumption of the risk.*

The Greenbriar Mall defendants assert that the trial court correctly granted summary judgment based on the doctrine of assumption of the risk. We agree.

> The general rule is that where one voluntarily and knowingly takes a risk involving imminent danger, he is precluded from recovery by reason of another's negligence. The defense of assumption of risk requires: (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom[;] and (3) that he voluntarily exposed himself to such risk. Stated another way: The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury.

3

*Baker v. Harcon, Inc.,* 303 Ga. App. 749, 754 (b) (694 SE2d 673) (2010) (citation and punctuation omitted).

In this case, the undisputed evidence shows that Juniel fully appreciated the danger involved, yet deliberately chose the obviously perilous course of conduct of putting himself in the armed robber's line of fire. As Juniel acknowledged, he intentionally put himself in harm's way and "became a human shield by covering the patron's body in an attempt to deflect and receive as much of the bullet wounds as possible." Because Juniel voluntarily and knowingly took a risk involving imminent danger of being shot, he is precluded from recovery under the assumption of the risk doctrine.

Swope argues that even if Juniel assumed the specific risk of being shot, he is not precluded from recovery pursuant to the rescue doctrine. However, the rescue doctrine does not apply in this case.

> The rescue doctrine applies when the defendants' negligent acts or omissions have created a condition or situation which involves imminent and urgent peril to life and property. In such instances, those negligent acts or omissions are also negligent in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, attempt to rescue the endangered life or property by reasonably appropriate means. The doctrine of rescue necessarily contemplates an assumption of the risk inherent in the peril created by

4

the defendants' negligence. *But the rescue doctrine would apply only if [the plaintiff] were acting simply as a volunteer, or bystander.*

*Griner v. Georgia Farm Bureau Mut. Ins. Co.*, 266 Ga. App. 289, 292 (2) (596 SE2d 758) (2004) (citations and punctuation omitted, emphasis supplied). See also *Walker Hauling Co. v. Johnson*, 110 Ga. App. 620, 623 (139 SE2d 496) (1964) (rescue doctrine applied to volunteer who helped fight a fire).

Pretermitting the question of whether Juniel exercised ordinary care for his own safety under the circumstances is the fact that he was not acting simply as a volunteer or bystander. Rather, the undisputed evidence shows that the only reason Juniel was on the scene was that he was on duty as a security guard or public safety officer. Since Juniel acted in his capacity as a security officer, the rescue doctrine does not apply, and instead the assumption of the risk doctrine controls. Indeed, "[t]he strength of the assumption of risk doctrine to persons employed in security is shown in *Atlanta Braves v. Leslie*, 190 Ga. App. 49 (378 SE2d 133) (1989)." *Martin v. Gaither*, 219 Ga. App. 646, 649 (466 SE2d 621) (1995).

In *Atlanta Braves*, as in the instant case, the plaintiff was on the defendants' premises working in his capacity as a security guard when he was shot by an armed robber. In awarding summary judgment to the defendants in that case, this court held:

5

> The possibility of a face-to-face encounter with a criminal is an ordinary and obvious risk incident to employment as an armed security guard. Accordingly, as a matter of law, [plaintiff], by accepting employment as [a] security guard, assumed the risk that he would have such encounters on the stadium premises. [Plaintiff] was, in effect, hired to provide an element of the very security that he alleges was negligently lacking.

*Atlanta Braves*, 190 GaApp. at 50 (1).

While Juniel was not armed, the same rationale applies to his employment as a public security officer at the mall. He acknowledged as much in his deposition, testifying that he was aware that in his capacity as a security officer he could have a face-to-face encounter with a criminal while on duty and possibly suffer injury. He had worked for many years in security, and testified, among other things, that "when you work as a security officer, for sure there's a chance that you may encounter some criminal activity, regardless of where it is." Indeed, as an example of such encounters, Juniel noted that approximately a year prior to the shooting in this case, he was on security duty at the mall when he tried to detain a suspected shoplifter, and had his hand sliced by the suspect with a pair of scissors. Thus, Juniel was fully aware of the dangers associated with his security work and assumed the risk of injury that he suffered.

Nevertheless, Swope argues that Juniel's attempt to protect the store patron exceeded the scope of his employment duties, which required only that he observe and report the incident, and he thus became a volunteer as contemplated by the rescue doctrine. While Swope has not cited any Georgia cases directly on point, we note that a case from another jurisdiction has rejected the same argument in a similar context; and we find the analysis in that case persuasive. In *Read v. Keyfauver*, 308 P.3d 1183 (Ariz. App. 2013), a law enforcement officer was injured when he went beyond his employment duties at the scene of an automobile accident by extricating the driver from the vehicle. Id. at 1185-1186. In challenging the grant of summary judgment to the driver on the officer's claim of negligence, the officer argued that because his extraction of the driver exceeded the scope of his employment duties, which only required him to secure and investigate the accident scene, he became a volunteer and could recover damages under the rescue doctrine. Id. at 1187-1188. However, the court ruled that it was not persuaded by the argument that the officer's conduct turned him into a volunteer because the critical question was not his conduct at the scene, but was whether he was "on the scene as a result of his on-duty obligations." Id. at 1188. Because the officer's employment compelled his presence at the scene in the first instance, he was not acting as a volunteer for purposes of the rescue doctrine

7

when he removed the driver from her vehicle, and therefore "his negligence claim against her [was] barred." Id.

While the issue was not directly addressed in *Griner v. Georgia Farm Bureau*, supra, that case involved a plaintiff who was injured when he exceeded the duties of the job that brought him to an accident scene, and this court held that the rescue doctrine did not apply under those circumstances. In that case, a wrecker driver was called to the scene of a collision by the state patrol to use his tow truck to pull one of the vehicles, in which the driver was trapped, out of the wreckage. 266 GaApp. at 289-290. But the towing cable snapped, rendering the tow truck "essentially useless." Id. at 290. The tow truck driver then went beyond his towing duties by attempting to help lower the front of the trapped vehicle by sticking a knife in a tire to let the air out. Id. When he did so, the tire exploded, injuring his hand. Id. The wrecker driver claimed that the rescue doctrine permitted him to recover for his injury. However, this court rejected the claim, holding that

> the rescue doctrine would apply only if [the wrecker driver] were acting simply as a volunteer, or bystander. Evidence showing that [he] was not simply a volunteer, or bystander, includes the fact that he was called to the scene by the Georgia State Patrol, in his capacity as a wrecker operator, because his name came up on the rotation list. His presence at the scene, therefore, was the result of a contractual duty.

8

266 GaApp. at 292 (2).

Thus, even though the issue of whether the tow truck driver's exceeding of his contractual duties transformed him into a volunteer was not directly addressed, this court still used a similar analysis to that used by the Arizona Court of Appeals in *Read*. That is, in both cases the critical question was not the plaintiff's conduct at the scene, but whether he was there in the first place because of his on-duty or contractual obligations. As recounted above, it is undisputed that Juniel was present at the scene of the mall shooting solely because he was on duty as a security officer. Accordingly, he was not a volunteer or bystander within the meaning of the rescue doctrine, and therefore the "trial court correctly granted the defendants' motions for summary judgment." *Griner*, supra.

2. *Remaining enumerations of error.*

Because of our holding above in Division 1, we need not address Juniel's remaining arguments.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*