**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 24, 2022**

# In the Court of Appeals of Georgia

A22A0165. THE GEORGIA POWER COMPANY v. BRANDRETH FARMS, LLC.

A22A0166. BRANDRETH FARMS, LLC et al. v. THE GEORGIA POWER COMPANY.

A22A0208. HELMS v. THE GEORGIA POWER COMPANY.

DOYLE, Presiding Judge.

The day after Georgia Power technicians serviced the electrical system at Brandreth Farms, a fire broke out in a barn, destroying the barn and other structures, killing multiple horses, and injuring Nathaniel Helms[1] and John Brandreth, the owner of the farm. Brandreth Farms and Brandreth (collectively, "the farm") sued Georgia Power, alleging that it caused the fire and asserting claims for negligence, negligent

---

[1] Helms's first name is spelled as "Nathaniel" in his appellate brief, in his complaint, and in various other pleadings in the trial court and "Nathaneal" in his notice of appeal and his medical records.

infliction of emotional distress, breach of contract, and punitive damages. The trial court denied Georgia Power's motion for summary judgment and motion to exclude the testimony of the farm's experts. Helms sued Georgia Power in a separate case, asserting claims for negligence, negligent infliction of emotional distress, and attorney fees, and the trial court granted summary judgment to Georgia Power. In Case No. A22A0165, Georgia Power appeals the trial court's orders denying its summary judgment motion and its motion to exclude the testimony of the farm's experts[2]; in Case No. A22A0166, the farm appeals the trial court's order denying its motion to exclude the testimony of Georgia Power's expert; and in Case No. A22A0208, the administrator of Helms's estate appeals the grant of summary judgment to Georgia Power.[3] For the reasons that follow, we reverse in Case No. A22A0165, dismiss as moot Case No. A22A0166, and affirm in Case No. A22A0208.

---

[2] We consolidate these three appeals for purposes of this opinion.

[3] Helms died on February 2, 2021, and a consent order was entered substituting Sterlin Wade Helms – the administrator of Nathaniel Helms's estate – as plaintiff. For purposes of this appeal, we refer to the plaintiff as "Helms."

Viewed in the light most favorable to the plaintiffs,[4] the record shows that Brandreth is the sole owner of Brandreth Farms, which is a horse breeding and exhibition business located on property with a barn and other structures, including Brandreth's residence. On Friday, March 13, 2015, Georgia Power sent technicians to the farm to work on the main barn's electrical system. The technicians determined that a buried line supplying power to the barn was deficient, but could not be repaired that day. As a result, the technicians installed a "service saver" device to provide power to the barn over the weekend, and they temporarily removed the barn's electric meter from its base and attached it to the service saver.[5] The following Monday, the technicians detached the meter from the service saver, disconnected the service saver, repaired the buried line, and reinstalled the meter to the barn. They finished their work Monday around lunch.

---

[4] See *Stern v. Pettis*, 357 Ga. App. 78. 83 (3) (847 SE2d 824) (2020) ("Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmoving party.") (punctuation and citation omitted). See also OCGA § 9-11-56 (c).

[5] The meter was manufactured by Elster, which is not a party to these actions.

Early the next morning, while standing in his carport, Brandreth saw fire and electrical arcing in the area of the barn where the meter was located. He ran to the barn to save his horses, but five of them died. In addition, the barn, an adjacent arena, and a connecting building were destroyed.

Georgia Power, the farm, and the farm's insurer — National Surety Corporation — sent experts to examine the scene and investigate the cause of the fire. In the debris, they discovered two circuit boards from the barn's electrical meter located 15 and 21 feet away, indicating that the meter had exploded. They also found other meter components showing that electrical arcing had occurred within the device. The experts engaged by the farm and National Surety concluded that the meter malfunctioned first, initiating a fire that spread throughout the barn. They blamed Georgia Power's technicians for either damaging the meter during their work or negligently replacing it without noticing that it was defective. Georgia Power, on the other hand, believed that the fire started elsewhere in the barn and later spread to the meter, causing it to arc and explode.

National Surety paid the farm $742,131.19 for a portion of its losses and then filed a subrogation action against Georgia Power in the United States District Court for the Northern District of Georgia. The district court excluded the testimony of

National Surety's causation expert, Edward Brill, under *Daubert v. Merrell Dow Pharmaceuticals*,[6] ruling that so little physical evidence had survived the fire that Brill could not rule out the possibility that the fire had originated elsewhere and then spread to the meter.[7] The court concluded that its job was "to ensure situations with such little evidence do not lead to final expert conclusions based on speculation."[8]

The plaintiffs argued that Georgia Power could be found negligent, even without Brill's testimony, under the doctrine of res ipsa loquitur, in which a jury may infer that the defendant acted negligently if "the occurrence involved would not have occurred but for negligence," and the defendant was "in exclusive control of the instrumentality."[9] The district court rejected that argument, however, ruling that "a product failure can occur absent negligence[,] and the meter was not in the exclusive control of [Georgia Power]."[10] In the absence of evidence that Georgia Power's

---

[6] 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

[7] See *Nat. Surety Corp. v. Ga. Power Co.*, 2019 WL 4394403, at *6 (II) (c) (2019 U.S. Dist. LEXIS 156566) (N.D. Ga. Sept. 12, 2019).

[8] See id.

[9] *Matthews v. Yoplait USA*, 352 Ga. App. 591, 594 (835 SE2d 393) (2019).

[10] *Nat. Surety Corp.*, 2019 WL 4394403 at *7.

5

negligence caused the fire, the district court granted summary judgment to Georgia Power.[11]

Meanwhile, Brandreth and the farm sued Georgia Power in Superior Court of Pickens County. Although fact discovery was conducted jointly with the federal case, the farm hired a different causation expert, engineer David Leone. Leone examined the meter's remains and noted that it was missing two of four small cotter pins used to hold the meter's prongs in place. Leone theorized that these pins were missing before the fire and had allowed excessive micro-vibrations within the meter, resulting in mechanical wear and failure. Leone further theorized that the damage to the meter had begun with the arcing and was "not a fire-related phenomenon." Leone could not determine when or how the pins went missing and noted they may have been absent when Georgia Power acquired the meter from the manufacturer. In that event, Leone opined, the technicians should have noticed the missing pins when they moved the meter to work at the barn.

---

[11] See id.

Georgia Power moved to exclude Leone's testimony as too speculative ,[12] but the superior court disagreed, ruling that his opinions were admissible under OCGA § 24-7-702 because he used reliable methods and had "sufficient facts and data" to work with. Georgia Power also moved for summary judgment, arguing among other things that the plaintiffs had no admissible evidence of causation, res ipsa loquitur did not apply, and the district court's *Nat. Surety Corp.* ruling was res judicata. The superior court also denied this motion, ruling that Leone's opinions were sufficient evidence of causation, that the plaintiffs' res ipsa loquitur theory should go to a jury, and that Georgia Power had "failed to provide clear proof of those parts of the record which are necessary to prove its [res judicata] defense." At Georgia Power's request, the trial court certified these orders for immediate review. Georgia Power filed an application for interlocutory appeal to this Court, which we granted, and timely filed its notice of appeal, which was docketed in this Court as Case Number A22A0165.

Helms, who was at the farm to teach a clinic and sustained burns from the fire while attempting to remove equipment and rescue his horse and others in his care,

---

[12] Georgia Power also moved to exclude the testimony of another one of the farm's experts, Wes Durham, who opined that the fire started in wood siding surrounding the meter due to a catastrophic failure of the meter. In concluding that the meter failed, Durham relied on Leone's opinions. The trial court also denied the motion to exclude Durham's testimony.

also sued Georgia Power, asserting claims for negligence, negligent infliction of emotional distress, respondeat superior, and attorney fees. Georgia Power moved for summary judgment, and the trial court granted the motion on the grounds that assumption of the risk barred Helms's claims.

*Case No. A22A0165*

1. *Res judicata/collateral estoppel.* Georgia Power contends that the trial court erred by denying its summary judgment motion because res judicata bars the farm's claims. We agree.

> The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. Res judicata prevents a plaintiff from instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim. Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.[13]

---

[13] (Footnotes omitted.) *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865-866 (1) (463 SE2d 5) (1995). See also OCGA § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is

8

The defendant has the burden of proving res judicata.[14]

The farm argues that Georgia Power failed to meet its burden of proving the defense because the record does not contain certified copies of documents in the district court case, that the causes of action are not identical, and that the identity of the parties are not identical.[15]

(a) *Proof.* We find meritless the farm's argument (and the superior court's conclusion) that Georgia Power failed to meet its burden of proving the defense of res judicata by "clear proof."

---

reversed or set aside.").

[14] See *Waggaman v. Franklin Life Ins. Co.*, 265 Ga. 565 (1) (458 SE2d 826) (1995); *Trejo-Valdez v. Associated Agents*, 357 Ga. App. 461, 465 (1) (850 SE2d 863) (2020).

[15] We note that the farm does not dispute that the third res judicata prerequisite – "a previous adjudication on the merits by a court of competent jurisdiction" – was met. *Waldroup*, 265 Ga. at 866 (2). Furthermore, we note that although Georgia Power did not assert its res judicata defense in its answer, it raised it by motion, and therefore, it did not waive the defense. See *Chrison v. H & H Interiors*, 232 Ga. App. 45, 50 (2) (500 SE2d 41) (1998) ("Res judicata is an affirmative defense and must be pleaded affirmatively. OCGA § 9-11-8 (c). The purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what he must meet as a defense. If it is not pleaded it is generally held that the defense is waived, but if it is raised by motion, or by special plea in connection with the answer or by motion for summary judgment there is no waiver."), quoting *McFadden Business Publications v. Guidry*, 177 Ga. App. 885, 887 (1) (a) (341 SE2d 294) (1986).

Certainly, "[t]he defense of res judicata must be sustained by clear proof."[16] And "[t]he record portions submitted must reveal which issues involved in the present suit were put in issue or might have been put in issue in the previous litigation."[17] "But a final prior certified order or judgment may be sufficient to prove the defense, depending on the circumstances of the particular case."[18]

Here, each page of the copy of the district court's prior judgment that Georgia Power filed in support of its summary judgment was file-stamped, and the judgment was published.[19] The farm does not contest the authenticity of the district court judgment nor does it specifically challenge the lack of certification for the judgment. Instead, the farm bases its argument on the fact that Georgia Power failed to file certified copies of the *record* in the district court case, in particular, the relevant

---

[16] (Punctuation omitted.) *Mayer v. Wylie*, 229 Ga. App. 282, 283 (2) (494 SE2d 60) (1997), quoting *Glen Oak, Inc. v. Henderson*, 258 Ga. 455, 458, n.4 (369 SE2d 736) (1988).

[17] *Mayer*, 229 Ga. App. at 283-284 (2).

[18] *Morgan County Bd. of Tax Assessors v. Vantage Products Corp.*, 323 Ga. App. 823 (748 SE2d 468) (2013), citing *Boozer v. Higdon*, 252 Ga. 276, 278 (2) (313 SE2d 100) (1984).

[19] See *Nat. Surety Corp. v. Ga. Power Co.*, 2019 WL 4394403, at *6 (II) (c) (2019 U.S. Dist. LEXIS 156566) (N.D. Ga. Sept. 12, 2019).

10

insurance policy. But, as in *Morgan County Bd. of Tax Assessors v. Vantage Products Corp.*,[20] the district court's judgment contains sufficient detail to identify the issue litigated and decided in that case, which was whether Georgia Power's negligence caused the fire at the farm.[21] Under the circumstances of this case, the superior court

---

[20] 323 Ga. App. at 826.

[21] In the district court case, National Surety alleged that Georgia Power's negligence caused the fire at the barn. The district court excluded the testimony of National Surety's expert, Edward Brill, explaining that

> little evidence survived this fire. It appears that Brill adequately surveyed the evidence available to him, but he himself acknowledged repeatedly the scarcity of evidence for him to evaluate. For example, Brill could not rule out other possible ignition sources or whether the meter was actually damaged when it was removed or reinstalled, much less which part of the meter was damaged as a result. As the gatekeeper, it is the Court's job to ensure situations with such little evidence do not lead to final expert conclusions based on speculation. Thus, the Court finds that Brill did not bridge the gap between the data and the opinion proffered. The data indicates that there was arcing in the meter and that the work done by [Georgia Power] in the days before likely involved removing and reinstalling the meter. As discussed above, neither of those facts lead to the conclusion that [Georgia Power's] work damaged the meter, or that the meter malfunctioned and caused the fire. Further, *without such testimony from Brill, [National Surety] cannot carry its burden on causation.*

erred by finding that Georgia Power failed to provide "clear proof" of its res judicata claim.

(b) *Identity of parties*.

A privy is generally defined as one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. There is no definition of "privity" which can be automatically applied to all cases involving the doctrines of res judicata

---

(Emphasis supplied.) *Nat. Surety Corp.*, 2019 WL 4394403, at *16. The district court also rejected National Surety's res ipsa loquitur argument:

The Court does not find this argument applicable in this case because the elements are not satisfied. Res ipsa loquitur requires that: (1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the injury was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury must not have been due to any voluntary action or contribution on the part of the plaintiff. The first and second elements are clearly not met in the present case – product failure can occur absent negligence and the meter was not in the exclusive control of [Georgia Power]. *Thus, absent Brill's opinion testimony, mere speculation links [Georgia Power] to the barn fire, and no reasonable jury could find in [National Surety's] favor.*

(Emphasis supplied.) Id. at *3.

12

and collateral estoppel, since privity depends upon the circumstances. Privity may be established if the party to the first suit represented the interests of the party to the second suit.[22]

"A party's insurer stands in the shoes of the insured as to identity of parties or privies."[23] As the farm's insurer, National Surety and the farm are privies. As sole proprietor, Brandreth is in privity with the farm.[24] And National Surety asserted and litigated the same negligence claim against Georgia Power that Brandreth and the

---

[22] (Citations and punctuation omitted.) *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 421-422 (1) (627 SE2d 549) (2006).

[23] (Punctuation omitted.) *Coffee Iron Works v. QORE, Inc.*, 322 Ga. App. 137, 140 (1) (b) (744 SE2d 114) (2013), quoting *Cincinnati Ins. Co. v. MacLeod*, 259 Ga. App. 761, 765 (4) (a) (577 SE2d 799) (2003). See also *Sanders v. Trinity Universal Ins. Co.*, 285 Ga. App. 705, 707-708 (2) (647 SE2d 388) (2007) (holding that insurance company "is privy to its insured . . . because it stands in the shoes of its insured and can have no greater right of recovery than its insured") (punctuation omitted); *American States Ins. Co. v. Walker*, 223 Ga. App. 194, 195 (1) (b) (477 SE2d 360) (1996) (insurer stands in the shoes of its insured).

[24] See *McCumber v. Petroleum Svcs. Group, LLC*, 333 Ga. App. 459, 461-462 (1) (773 SE2d 802) (2015) (physical precedent only). See also *Dalton Paving & Constr. v. South Green Constr. of Ga.*, 284 Ga. App. 506, 508 (643 SE2d 754) (2007) (holding that developer, owners, and property manager were "in essence third party beneficiaries of the subcontract" between plaintiff general contractor and defendant subcontractor, who previously arbitrated claim over contract).

13

farm allege in this case.[25] It follows that National Surety, the farm, and Brandreth "[are] in law so connected . . . [and] have such an identity of interest" that they are in privity.[26]

(d) *Identity of claims*.

A cause of action has been defined as being the entire set of facts which give rise to an enforceable claim. The question in determining identity of cause of action is whether both claims arose from the same set of facts. It is the entire set of facts themselves, once they occur, however, that give rise to the cause of action, regardless of whether the party fails to include certain facts in the first action. In considering the entire set of facts, we focus on the wrong that is asserted.[27]

The farm's complaint in the instant case alleges negligence, intentional infliction of emotional distress, breach of contract, and punitive damages. These

---

[25] See *McCumber*, 333 Ga. App. at 461-462 (1); *Minnifield v. Wells Fargo Bank, N.A.*, 331 Ga. App. 512, 516-517 (3) (771 SE2d 188) (2015); *Coffee Iron Works*, 322 Ga. App. at 140 (1) (b); *Dalton Paving*, 284 Ga. App. at 508-509.

[26] (Punctuation omitted.) *Brown & Williamson Tobacco Corp.*, 280 Ga. at 421-422 (1).

[27] (Citations and punctuation omitted.) *Dashtpeyma v. Walker*, 359 Ga. App. 644, 646 (1) (859 SE2d 799) (2021), quoting *Coen v. CDC Software Corp.*, 304 Ga. 105, 105 (816 SE2d 670) (2018), *Morrison v. Morrison*, 284 Ga. 112, 116 (3) (663 SE2d 714) (2008), and *Sweet City Landfill v. Lyon*, 352 Ga. App. 824, 836 (4) (b) (835 SE2d 764) (2019).

claims, including Brandeth's personal injury claim and the farm's breach of contract claim, are based on negligence.[28] National Surety's prior suit against Georgia Power in the district court involved the same set of facts and an identical theory of liability, i.e., that "Georgia Power's negligent work on the barn's electrical service equipment caused the fire."[29] Thus, the instant case and the district court case involve the same set of facts and are based on the same wrong: Georgia Power's alleged negligence. And athough Brandreth and the farm now seek to recover for personal injuries, punitive damages, breach of contract, and property damages in excess of those sought

---

[28] In the complaint, the farm alleges that it entered into a contract with Georgia Power "for the provision and maintenance of electricity to the Subject Property in exchange for payment," that "[i]mplied in the [a]greement is a duty requiring [Georgia Power] to perform its maintenance duties and provide electricity in a fit and workmanlike manner that ensures safety for the Subject Property and its residents," and that Georgia Power "breached its duty to Brandreth Farms by failing to properly maintain the equipment at the Subject Property . . . [and] by failing to provide the contracted for services and electricity in a manner safe to Brandreth Farms and the Subject Property." Given the allegations and the fact that the complaint did not specify the contractual provision that Georgia Power allegedly breached, the "breach of contract" claim is necessarily based on a negligence theory.

[29] *Nat. Surety Corp.*, 2019 WL 4394403, at *3.

15

by National Surety, the newly alleged claims flowed from the exact same wrong, i.e., the fire purportedly caused by Georgia Power's negligence.[30]

Accordingly, the causes of action are the same in the instant case and the prior district court case.[31] In light of the identical causes of action and parties, res judicata bars the farm's claims against Georgia Power in the instant case.[32] Therefore, the superior court erred by denying summary judgment to Georgia Power.

---

[30] See *Crowe v. Elder*, 290 Ga. 686, 688-689 (723 SE2d 428) (2012) (holding that res judicata applied to bar subsequent proceeding because "[t]he recasting of the same alleged conduct by [the defendant] as breach of contract instead of fraud does not constitute a new or different cause of action."); *Harris v. Deutsche Bank Nat. Trust Co.*, 338 Ga. App. 838, 841 (792 SE2d 111) (2016) ("The doctrine of res judicata applies even if some new factual allegations have been made, some new relief has been requested, or a new defendant has been added. It is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.") (citations, punctuation, and emphasis omitted).

[31] See *Crowe*, 290 Ga. at 688-689; *Dashtpeyma*, 359 Ga. App. at 646-648 (1). See also *ChoicePoint Svcs. v. Hiers*, 284 Ga. App. 640, 643 (2) (644 SE2d 456) (2007) ("the adding of additional claims for relief which grow out of the same factual situation does not amount to the adding of a new or different cause of action") (punctuation omitted); *McCracken v. City of College Park*, 259 Ga. 490, 491 (2) (384 SE2d 648) (1989) ("So long as a party pleads but one wrong in respect to the same transaction, the cause of action is the same, and it makes no difference that the remedy sought to be applied under different procedures growing out of the same wrong may be different.") (punctuation omitted).

[32] See *Dashtpeyma*, 359 Ga. App. at 648 (2).

2. In light of our holding in Division 1, we need not address Georgia Power's remaining enumerations in this appeal.

*Case No. A22A0166*

3. In this cross-appeal of Case No. A220165, the farm argues that the superior court abused its discretion by denying its motion to exclude the testimony of Georgia Power's expert, Tony Echols. In light of our holding in Division 1, this appeal is moot and therefore dismissed.

*Case No. A22A0208*

4. Helms contends that the trial court erred by granting summary judgment to Georgia Power as to his claims. We disagree.

In 2015, Brandreth hired Helms to teach a mounted shooting clinic at the farm on March 17, 2015.[33] On March 16, 2015, Helms arrived at the farm and unloaded several horses – one he owned and three owned by others– into stalls located in the farm arena. He unloaded and prepared equipment in the arena to be used in the clinic the following morning, set up riding tack and feed outside the stalls where he placed

---

[33] Helms had previously conducted a shooting clinic at the farm in November or December 2014, for which he was paid $1,000 per day plus travel expenses, which included lodging at the farm.

the horses, and moved personal belongings into the guest house, where he stayed the night. Helms also gave lessons at the farm that day.

The next morning, Helms was alerted to the fire by lights and screaming, and he immediately rushed towards the barn and arena. Helms ran to the arena from the side farthest from the fire, at which time the barn was "fully engulfed and falling in on itself," and firefighters were already on the scene, some already spraying water on the fire. When Helms entered the arena, which was also burning, Brandreth had successfully gotten two horses out of the arena. Helms began "hauling gear out," including his guns and holsters and "stuff" for another person.

According to Brandreth, melting plastic was falling around Helms as he hauled gear out of the arena, and Brandreth, afraid that Helms might die, told Helms "to leave." Helms then realized that there were still horses in stalls, and he tried to release them; one was on the ground and another would not leave the stall. Helms's horse and another he brought died in the fire, and a third that he brought survived but was severely injured. Helms, who was carried out of the fire by a fireman, sustained serious burns to his feet and left forearm and hand.

Helms sued Georgia Power, alleging that it damaged the power meter mounted to the barn while performing repair and restoration work, causing the meter to

18

explode. Helms's claims include negligence, negligent infliction of emotional distress, respondeat superior, and attorney fees. Georgia Power moved for summary judgment, in part based on the argument that Helms assumed the risk of injuries. The trial court granted the motion, concluding that assumption of the risk barred Helms's claims and rejecting his contention that his claim survives under the rescue doctrine. This appeal followed.

In Georgia,

[t]he affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk means that the plaintiff has both actual and subjective knowledge of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.[34]

---

[34] (Punctuation omitted.) *Williams v. City of Tybee Island*, 362 Ga. App. 775, 777 (1) (870 SE2d 100) (2022), quoting *Daly v. Berryhill*, 308 Ga. 831, 834 (843 SE2d 870) (2020).

In the instant case, Helms does not dispute that he assumed the risk of the fire when he entered the arena. Instead, he contends that his claim survives under the rescue doctrine.

> The rescue doctrine applies when the defendants' negligent acts or omissions have created a condition or situation which involves imminent and urgent peril to life and property.[35] In such instances, those negligent acts or omissions are also negligent in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, attempt to rescue the endangered life or property by reasonably appropriate means.[36]

---

[35] While there is "little difference in principle between rescuing life or one's own property[,] . . . [because t]he only question in either case is . . . [whether] the stimulus of the negligence under the circumstances call[s] for the effort to rescue as a normal reaction to the situation, which cannot be said to be rash and reckless as a matter of law," the main distinction is that "the circumstances in [rescuing human life] are likely to justify a greater risk and more desperate effort than [rescuing one's own property]." *Rushton v. Howle*, 79 Ga. App. 360, 361 (53 SE2d 768) (1949). See also *Lorie*, 186 Ga. App. at 755 (1) ("A greater risk of one's person to save life is justified than in the effort to save property only."); *Flowers v. Slash Pine Electric Membership Corp.*, 122 Ga. App. 254, 258-259 (176 SE2d 542) (1970) (applying the rescue doctrine to a person attempting "to save human life"). For the reasons set forth herein, this distinction is not relevant to our analysis, and we need not decide whether rescuing animals/livestock justifies a greater or lesser risk than rescuing property or other life.

[36] (Punctuation omitted.) *Griner v. Ga. Farm Bureau Mut. Ins. Co.*, 266 Ga. App. 289, 292 (2) (596 SE2d 758) (2004), quoting *Lorie v. Standard Oil Co.*, 186 Ga. App. 753, 754 (1) (368 SE2d 765) (1988).

"[T]he doctrine of rescue necessarily contemplates an assumption of the risk inherent in the peril created by the defendants' negligence and allows recovery for injuries thereby incurred, for the reason that the defendants were charged with the foreseeability of their negligence attracting rescuers to assume the risks."[37] The doctrine, however "appl[ies] only if [the plaintiff was] acting simply as a volunteer or bystander."[38]

Here, the trial court concluded that Helms was not at the scene of the fire as a bystander or volunteer. Helms had arrived at the farm the night before to lead a clinic the day of the fire,[39] he gave lessons the evening before the fire, and his lodging at the guest house on the farm was part of his compensation. Nevertheless, his agreement with the farm required him to conduct a clinic, and it in no way imposed a duty or

---

[37] (Punctuation omitted). *Trammel*, 256 Ga. App. 412, 421-422 (5) (568 SE2d 715) (2002), quoting *Walker Hauling Co. v. Johnson*, 110 Ga. App. 620, 624-625 (139 SE2d 496) (1964).

[38] (Punctuation omitted.) *Griner*, 266 Ga. App. at 292 (2).

[39] In his complaint, Helms alleged that he "was at Brandreth Farms for the purpose of providing training services and performance of an instructional clinic on the premises of Brandreth Farms."

21

obligation on him to save property or horses from a burning arena.[40] Therefore, there is at least a question of fact regarding whether Helms was acting as a volunteer/bystander for purposes of the rescue doctrine analysis.

Our analysis, however, does not end there. Whether or not Helms qualifies as a volunteer or bystander for purposes of the rescue doctrine, it permits him to recover only if, as aforementioned, he, "in the exercise of ordinary care for [his] own safety under the circumstances, *attempt[ed] to rescue the endangered life or property by reasonably appropriate means*."[41]

> The negligence which causes injury or danger to another is negligence
> also as to the rescuer, and the latter in an effort to save human life will

---

[40] See *Walker Hauling*, 110 Ga. App. at 620-623 (holding that the rescue doctrine applied to an off duty fireman who was injured when he, in response to a call for volunteers, voluntarily attempted to extinguish a fire while "under no duty or compulsion to do so"). Compare *Griner*, 266 Ga. at 292 (2) (holding that the rescue doctrine did not apply to a tow truck driver who was injured when he pierced the tire of a pickup truck trapped under a trailer truck in an attempt to unwedge the pickup truck because he "was not simply a volunteer, or bystander, . . . he was called to the scene by the Georgia State Patrol, in his capacity as a wrecker operator, because his name came up on the rotation list. His presence at the scene, therefore, was the result of a contractual duty."); *Swope v. Greenbriar Mall Ltd. Partnership*, 329 Ga. App. 460, 461-462 (1) (765 SE2d 396) (2014) (holding that the plaintiff, who was working as a public safety officer at the mall, did not qualify for the rescue doctrine when he was shot by an armed robber while trying to shield a patron because he was acting "in his capacity as a security officer" when he was shot).

[41] (Emphasis supplied.) *Griner*, 266 Ga. App. at 292 (2).

not be barred on the ground that he did not exercise ordinary care for his own safety or even that he assumed the risk of injury to himself *unless his actions are so imprudent and beyond what a person in the same circumstances might be expected to do that they must be classified as reckless or wanton.*[42]

"Whether the rescuer acts rashly or wantonly, except in plain and indisputable cases, is a question for the jury."[43]

Here, Helms's actions in repeatedly running into the burning arena in this case are plainly and indisputably rash and wanton. When Helms entered the burning arena, firefighters were already at the scene, and some of them were spraying water on the fire. Melting plastic was falling around him as he pulled gear out of the arena. And Brandreth, who had already made valiant efforts to save as many horses as he could, told Helms to leave the area because he was afraid for Helms's life. Nevertheless, instead of permitting the firefighters to handle the fire and rescue, Helms ran back into the burning arena, with melting plastic falling on him and smoke enveloping the area. Under these circumstances, his actions exhibited "reckless and wanton disregard

---

[42] (Emphasis added.) *Lorie v. Standard Oil Co.*, 186 Ga. App. 753, 755 (1) (368 SE2d 765) (1988), citing *Blanchard v. Reliable Transfer Co.*, 71 Ga. App. 843, 845 (32 SE2d 420) (1944).

[43] *Blanchard*, 71 Ga. App. at 845.

of the imminent consequences" such that he assumed the risk of his actions.[44]

Accordingly, his claims are barred as a matter of law, and the trial court did not err by granting summary judgment.

*Judgment affirmed in Case No. A22A0208. Judgment reversed in Case No. A22A0165. Appeal dismissed in Case No. A22A0166. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[44] *Lorie*, 186 Ga. App. at 755 (1).